IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PATRICIA NASH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 3:15-cv-00093 |
| ) | JUDGE CAMPBELL |
| JOHN M. McHUGH, Secretary of the ) | |
| Army, BRISTOL BAY NATIVE CORP., ) | |
| and EAGLE APPLIED SCIENCES, LLC, ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION**

Pending before the Court is Defendant McHugh's Motion to Dismiss or, in the alternative, for summary judgment. (Docket No. 80.) For the reasons set forth herein, the Court will deny Defendant McHugh's motion.

### **I.     Factual Background and Procedural History**

Plaintiff Patricia Nash was employed by Defendant Eagle Applied Sciences, LLC ("EAS") a wholly-owned subsidiary of Defendant Bristol Bay Native Corporation ("Bristol Bay"). Defendant John McHugh is the Secretary of the United States Army. During the time period relevant to this case, EAS had a contract with the Army to provide psychological services to soldiers. The following facts are largely taken from Plaintiff's "Corrected First Amended Complaint" (hereinafter, "Complaint") (Docket No. 69). Plaintiff is a citizen of Kentucky. She was born on July 7, 1976. She is a Caucasian woman with a Master's degree in social work. EAS hired her to work at Fort Campbell, which is located partly in Tennessee and partly in Kentucky. Plaintiff was employed by EAS between June 1, 2011, and August 4, 2012. She served as a psychology technician who assisted with soldier in-processing. Plaintiff alleges that her direct supervisor at Fort Campbell was

Christopher Egan, who was, at the time, in the United States Army serving as a non-commissioned officer with the rank of Sergeant First Class ("SFC"). Immediately upon the start of her employment, Mr. Egan made inappropriate, aggressive, and offensive sexual advances toward her because of her sex.

From June 2011 to October 2011, Mr. Egan regularly asked Plaintiff if she wanted sex or a "quickie" during lunch. Plaintiff demanded that Mr. Egan stop such behavior after every sexual request he made, but his sexual advances persisted.

From June 2011 to July 2011, Mr. Egan called Plaintiff repeatedly on her personal mobile phone while she was at lunch and at home with her husband after business hours. These calls had no relation to any professional work and were consistently inappropriate in nature.

Mr. Egan claimed to have power over her employment.

In June of 2011, Mr. Egan walked in on Plaintiff as she was teleconferencing with a co-worker, Mr. John C. O'Brien. Without any warning or cause, Mr. Egan pulled down his pants and exposed his genitals to both Plaintiff and Mr. O'Brien.

From June 2011 to November 2011, Mr. Egan repeatedly made non-consensual, inappropriate, and offensive contact and remarks to Plaintiff, including pulling her hair, slapping her buttocks with the open palm of his hand, tickling her sides, grabbing her hand in such a way as to make it brush against his genitals, and telling her that she owed him oral sex for recommending her for permanent employment at the Army base.

On November 1, 2011, Mr. Egan recommended Plaintiff and another woman for a permanent position at the Army base as a psychologist technician.

On November 3, 2011, Mr. Egan entered Plaintiff's office and requested oral sex and sexual

2

intercourse from Plaintiff. They were the only individuals in the building at the time. Plaintiff refused Mr. Egan's requests and attempted to leave her office. Mr. Egan attempted to kiss her as she left her office. When she again rebuffed his advance, Mr. Egan grabbed Plaintiff by her ponytail and forced her into an office across the hall from her own, where he slammed her against a wall, penetrated her vagina with his fingers, and rubbed his genitals against her buttocks until he ejaculated, at which point he let her leave. After this incident, Plaintiff asked her co-worker, Mr. O'Brien, to monitor her office via the camera located on her office equipment because she did not feel safe at work.

On November 7, 2011, the names of the two women, including Plaintiff, whom Mr. Egan had recommended for the available permanent Army positions were transmitted to the Army's Human Resources department ("HR").

On November 8, 2011, Mr. Egan again approached Plaintiff in her office while she was alone, and soon thereafter grabbed Plaintiff's head and pushed it toward his genitals. When Plaintiff tried to push Mr. Egan away, he attempted to pick her up and carry her back to the office where the November 3, 2011 incident occurred. Mr. O'Brien, apparently alerted to the events in the office based on his monitoring of the camera in Plaintiff's office at her request, then knocked on the outside door of Plaintiff's office building, at which point Mr. O'Brien stepped into the hall and Plaintiff retreated to a restroom.

Although this fact is not mentioned in Plaintiff's Complaint, her response to the Army's motion to dismiss indicates that on November 18, 2011, Plaintiff reported the assault to the Criminal Investigative Division.

On November 29, 2011, Melba Williams, in the Army's HR department, requested that the

3

Army not proceed with hiring Plaintiff, as the Army had not yet formally offered her the position. The other woman whom Mr. Egan had recommended had already been offered a position and had been given a start date, and the Army did not put a hold on the hiring process for that individual.

On December 2, 2011, Plaintiff contacted the Fort Campbell Equal Employment Opportunity office ("EEO").

On December 21, 2011, Plaintiff filed a formal complaint with the EEO. Ms. Nash was thereafter subjected to new restrictions at her work place, including not being allowed to be alone in her office building, having her access key to the building taken from her, and being required to check in and out with her new supervisor. Mr. Egan remained in his position, which caused Plaintiff to experience a hostile environment.

The remaining procedural history is contained in the parties' pleadings related to the Army's motion to dismiss. Mr. Egan eventually pled guilty at his court martial to assault, adultery, and an improper sexual relationship with a subordinate. (Docket No. 94 at 5 n. 6.) The charges of rape and sexual assault were dismissed. (*Id.*) The Plaintiff represents that this was the result of her not allowing the prosecution to access her medical records.

On November 28, 2012, the EEO conducted a fact finding conference, at which Plaintiff testified.

On February 27, 2014, the administrative judge who was to hear Plaintiff's complaint issued an order that Plaintiff had voluntarily withdrawn claims for loss of consortium and compensatory damages, which she states in her brief was based on her decision not to provide her medical records to the Army, such that no evidence on these issues would be allowed at the upcoming administrative hearing. The administrative judge had scheduled April 22 to 25, 2014, for a three-day hearing, but

4

Plaintiff, through current counsel, withdrew her administrative complaint. (Docket No. 94 at 8.)

On May 28, 2014, Plaintiff filed suit in the United States District Court for the Western District of Kentucky. On January 30, 2015, the United States District court for the Western District of Kentucky transferred this action to this Court based on its determination that the alleged conduct giving rise to Plaintiff's claims occurred in the portion of Fort Campbell that is in Tennessee. (Docket No. 18.) Since the case was transferred to this Court, the Court has granted Plaintiff leave to amend her Complaint more than once. Plaintiff labeled her most recent complaint as the "Corrected First Amended Complaint." (Docket No. 69.)

In the Corrected First Amended Complaint, Plaintiff brings two Title VII claims against the Army under the theory that the Army is a joint employer. Count One alleges sexual discrimination in the form of harassment and hostile work environment. Count Two alleges sexual discrimination in the form of retaliation. Her only claim against Bristol Bay and EAS was a claim of sex discrimination under the Kentucky Civil Rights Act, Chapter 344 *et. seq.* ("KCRA"). The Court, by separate order, has dismissed the state-law claim against Bristol Bay and EAS, leaving the Army as the only defendant in this matter.

## II. Legal Analysis

The Army has attached numerous documents to its motion that have not been produced in discovery. The parties have conducted no formal discovery since the filing of this case. The Army argues that some information was exchanged during the administrative complaint process. Plaintiff was unrepresented during that proceeding. Counsel for Plaintiff has submitted a declaration stating that Plaintiff is unable to present facts in opposition to the Army's motion for summary judgment because she has not had the opportunity to take discovery. (Docket No. 85-8.) Pursuant to Rule of

Civil Procedure 56(d), the Court denies the Army's motion for summary judgment at this point. Plaintiff is entitled to discovery in this matter, and the Army's motion for summary judgment is premature.

In considering the Army's motion to dismiss, the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 1950. A legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient. *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

The Army makes four arguments in its motion to dismiss. The first is that the Army was not Plaintiff's joint employer. Assuming the veracity of Plaintiff's allegations, she has pled sufficient facts to plausibly give rise to an entitlement to relief against the Army under Title VII as her joint employer.

The Army's second argument is that, regardless of whether the Army was her joint employer, her reprisal claim that the Army withdrew her from consideration for the permanent Army position because she filed a formal complaint with the EEO must be dismissed because, by her own sworn testimony during the administrative proceedings, she had not engaged in protected EEO activity at

6

the time her consideration for the job had been withdrawn. It appears that the Army invites the Court to scrutinize the precise wording of her retaliation claim, which states as follows: "Plaintiff engaged in protected activity when she opposed the unlawful actions of SFC Egan and Defendants, by consulting with the Equal Employment Office, and by filing a formal complaint with the Equal Employment Office." (Docket No. 69 at 8, ¶ 53.) It is true that the Plaintiff did not make her EEO complaint until after the Army suspended its consideration of her for the permanent Army position. Nonetheless, Plaintiff's Complaint alleges sufficient facts to plausibly entitle her to relief against the Army as a joint employer based on her protected activity of protesting Mr. Egan's alleged sexual harassment, assault, and rape directly to Mr. Egan, which is detailed at length in the factual section of her Complaint, as recited above. *E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1067 (6th Cir. 2015) ("Applying these broad definitions, we conclude that a demand that a supervisor cease his/her harassing conduct constitutes protected activity covered by Title VII.").

The Army's third argument is that the Plaintiff's remaining reprisal claims do not rise to the level of an adverse action and were, in actuality, actions taken to ensure her safety following her allegations of sexual harassment. The Court does not have before it sufficient evidence to determine whether Plaintiff's remaining reprisal claims can be determined, as a matter of law, to be insufficient to rise to the level of an adverse employment action. The Plaintiff has alleged sufficient facts to survive the Army's motion to dismiss on this issue.

Last, the Army claims that, regardless of whether it was Plaintiff's joint employer, her claim for compensatory damages was dropped at the administrative level and, as a result, cannot be revived in this court. The Army asserts that a federal employee must pursue and exhaust administrative remedies as a jurisdictional prerequisite to filing a Title VII action. (Docket No. 81

at 11.) The Court notes that, notwithstanding the Army's argument in its briefs that it was not a joint employer of Plaintiff, which would mean the Plaintiff is not a federal employee, her EEO complaint was handled as though she was a federal employee and the Army has presented this legal issue presuming that she was a federal employee. Accordingly, the Court will analyze this as though she were a federal employee.

Contrary to the Army's position, it is clear from Supreme Court and Sixth Circuit precedent that "the question of administrative exhaustion is nonjurisdictional." *Adamov v. U.S. Bank Nat. Ass'n*, 726 F.3d 851, 856 (6th Cir. 2013) (analyzing and relying on *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006)).

As the Sixth Circuit has held,

> It is well-established that a party's exhaustion of administrative processes for filing a claim of discrimination is a condition precedent to filing suit in the district court, rather than a jurisdictional prerequisite. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982) (holding that the administrative provisions requiring an employee to pursue a charge of discrimination with the EEOC are conditions precedent to suit subject to waiver, tolling and estoppel); *see also Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990) (extending *Zipes* to administrative requirements for federal employees bringing suits against federal agencies).

*Mitchell v. Chapman*, 343 F.3d 811, 819-20 (6th Cir. 2003); *accord Spengler v. Worthington Cylinders*, 615 F.3d 481, 489 (6th Cir. 2010) ("[I]n light of *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006), we can no longer conclude that exhaustion is a jurisdictional prerequisite.").

The Sixth Circuit has outlined the following administrative process required for federal employees alleging employment discrimination:

> Under 29 C.F.R. § 1614.105(a)(1), federal employees who believe they are the subject of discrimination are required to consult an agency Equal Employment Opportunity (EEO) counselor within forty-five calendar days of the alleged discriminatory event. The employee may then file suit in district court within ninety days of the agency's final action or after 180 days from the filing of the initial charge

8

with the agency. *See* 42 U.S.C. § 2000e-16(c).

*Spurlock v. Postmaster Gen.*, 19 F. App'x 338, 339 (6th Cir. 2001). Similarly, the federal regulations provide the following:

> A complainant who has filed an individual complaint, an agent who has filed a class complaint or a claimant who has filed a claim for individual relief pursuant to a class complaint is authorized under title VII, the ADEA and the Rehabilitation Act to file a civil action in an appropriate United States District Court:
>
> (a) Within 90 days of receipt of the final action on an individual or class complaint if no appeal has been filed;
>
> (b) *After 180 days from the date of filing an individual or class complaint if an appeal has not been filed and final action has not been taken*;
>
> (c) Within 90 days of receipt of the Commission's final decision on an appeal; or
>
> (d) After 180 days from the date of filing an appeal with the Commission if there has been no final decision by the Commission.

29 C.F.R. § 1614.407 (emphasis added).

Plaintiff complied with these time lines and procedures. She reported the "discriminatory event" to the EEO counselor within forty-five calendar days of the alleged discriminatory events and waited well over 180 days to file suit in district court. Indeed, almost two and one-half years had elapsed between the time the Plaintiff filed her initial charge in December of 2011 and the date she filed suit in district court in May of 2014. There is no evidence in the record that the Agency had taken *any* steps to resolve her claims within 180 days. Once the 180 days had passed, the Plaintiff was no longer required to wait for the administrative process. Although she indicated during the administrative process that she would not pursue compensatory damages, that does not change the fact that she complied with the statute.

As explained by a district court in the District of Columbia,

9

> While a complainant may elect to allow an administrative hearing to run its full course, there is no statute or regulation requiring a plaintiff to complete the administrative hearing process if more than 180 days has passed without a final determination by the agency; to the contrary, the plain language of 42 U.S.C. § 2000e–16(c) and 29 C.F.R. § 1614.407(b) give federal employees the right to sue in federal district court if an agency fails to take final action on his or her Title VII complaint with 180 days. This determination is consistent with the purpose of the 180–day provision, which our Circuit has described as follows:
>
>> The 180 day provision represents a Congressional determination that providing prompt access to the courts in discrimination disputes is so important that the administrative process will be given only a finite time to deal alone with a given dispute.... Requiring a complainant to further pursue administrative remedies after fulfilling all the prerequisites to suit specified by the EEOA, and most importantly, after 180 days have elapsed without final administrative action, would frustrate that response. *Wilson v. Pena*, 79 F.3d 154, 167 (D.C. Cir.1996) (quoting *Grubbs v. Butz*, 514 F.2d 1323, 1327–28 (D.C. Cir.1975)).

*Augustus v. Locke*, 699 F. Supp. 2d 65, 71–72 (D.D.C. 2010).

The Plaintiff represents in her response to the Army's motion to dismiss that she withdrew her claim for compensatory damages at a time she was unrepresented by counsel because she was uncomfortable giving the Army access to her medical records. (Docket No. 85 at 3.) As discussed above, she also represents that, although Mr. Egan was charged with rape, the prosecution against him did not result in a rape conviction because she would not allow the prosecutor to access her medical information. (*Id.*) She represents in her brief that the Army sought her entire medical records "for a variety of impertinent reasons, e.g., to determine if she had any other extramarital affairs, or whether she ever had an abortion, or whether she ever had consensual sex with her attacker, SFC Egan." (*Id.* at n.2.) The Court is not in a position to address at this juncture what evidence the Army requested of the Plaintiff or the scope of the information and records the Army was entitled to during the administrative process, but it is not difficult to imagine a *pro se* plaintiff's

10

concern about providing medical records in such a situation. In the context of considering whether a plaintiff can pursue a claim in federal court that was not specifically requested in the EEOC charge, the Sixth Circuit has held that *pro se* EEOC complaints are to be construed liberally. *Younis v. Pinnacle Airlines, Inc*., 610 F.3d 359, 362 (6th Cir. 2010). The policy of construing *pro se* complaints liberally supports Plaintiff's argument that not allowing her to pursue a remedy that she withdrew when unrepresented in the EEO process would be unduly harsh.

There does not appear to be Sixth Circuit precedent that dictates the outcome of the question presented in this case—namely whether a plaintiff who timely reports "a discriminatory event," waits well over 180 days without resolution of her claims by the Agency, withdraws her *pro se* request for compensatory damages over two years after filing her initial complaint, and then withdraws her entire administrative complaint prior to a scheduled administrative hearing in order to file in district court—has exhausted her administrative remedies. The Army has cited no Sixth Circuit precedent in support of its contention that federal employees must exhaust a request for compensatory damages before seeking redress in Court (Docket No. 81 at 12; 94 at 22.), and the Supreme Court has expressly declined to rule on the question. *West v. Gibson*, 527 U.S. 212, 223 (1999).

The Court concludes that the Plaintiff has exhausted the administrative process required by federal law and may pursue all her claims, including her request for the remedy of compensatory damages in this case.

## IV. Conclusion

For the foregoing reasons, the Court will deny the Army's Motion to Dismiss or, in the Alternative, for Summary Judgment. (Docket No. 80.)

An appropriate order is filed herewith.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE